166 So. 126

**MOUSSA v. TRASCHER.**

No. 33731.

Feb. 3, 1936.

Rehearing Denied March 2, 1936.

Harold J. Moore, of New Orleans, for appellant.

Richard A. Dowling, of New Orleans, for appellee.

HIGGINS, Justice.

This is a suit for a divorce on the grounds of adultery, which is alleged to have been committed by the defendant husband with a certain named young woman on June 15, 1933, at No. 1937 Franklin avenue, this city; and for the custody of plaintiff's infant daughter, and for alimony for the support of the child and herself.

The husband entered a general denial and in reconvention asked for a separation from bed and board on the ground of abandonment, and for the custody of his minor child.

There was judgment in favor of the plaintiff as prayed for, the alimony being fixed at the sum of $6 per week, and the reconventional demand was dismissed. The defendant appealed.

The record shows that when the plaintiff was eighteen and defendant twenty-two years of age, they were married on May 18, 1932, and lived together for a period of four months. They separated, and during the separation the baby was born of the union. The wife went to live with her parents and the husband contin-

ued to live at No. 1937 Franklin avenue, which is used jointly as a residence and place of business.

On June 15, 1933, defendant's sister, Mrs. Thompson, had a birthday party for her husband at their residence, No. 2826 Franklin avenue, this City. There was considerable drinking of intoxicating liquors and a hilarious party ensued. About 10:30 o'clock that night, plaintiff, who was living with her parents, who operated a restaurant on Canal street, received an anonymous telephone call, to the effect that her husband was attending the party with a young lady and planned to repair with her, about midnight, to his apartment at No. 1937 Franklin avenue. Plaintiff requested a Mr. Carraguay, a friend of her family, to take her to the scene of the party. He did not have an automobile and persuaded Jos. Maunsy to drive them in his car to the Thompson residence. They parked the automobile close to the residence and observed the guests dancing and drinking. About 12:30 o'clock, the defendant and a young lady left the party and drove in his automobile to his apartment. The wife and her two companions followed and parked some distance away, observing the defendant and the young lady enter the apartment. Mr. Maunsy then drove his car to the rear of the defendant's car, which was in front of the apartment, and parked there. Defendant and the young woman entered the bedroom of the apartment, turned on the lights and remained there for a period of approximately one hour. When they came out, the plaintiff accused her husband and his

companion with having committed adultery, and both of them remained silent, and they immediately got into the defendant's automobile and drove away.

The defendant does not deny that he attended the party at his sister's residence and went to his apartment at 12:30 o'clock with a young lady, but states that the young lady named as co-respondent did not attend the party, and the young woman who accompanied him to his apartment was his sister, Mrs. Thompson, who had left some liquor in his bathroom, and the refreshments having been exhausted at her home, they went there for the purpose of getting two quart bottles of whisky.

Jos. Maunsy and the plaintiff, both of whom knew Mrs. Thompson, stated that she was not the woman who accompanied the defendant when he entered and left his apartment.

Due to illness, Mr. Carraguay was unable to be present and testify when the case was tried, but plaintiff requested the court to give her an opportunity to have his testimony taken, in the event the court deemed it necessary.

Defendant and his sister, Mrs. Thompson, testified that it was she who went with him to his apartment for the purpose of getting the whisky to serve her guests. They admitted that the plaintiff accosted them when they came out of the apartment and accused him of infidelity, and that both of them remained silent and immediately drove away in his car. The only explanation of why they did not reply to

her accusations was that they were dumfounded.

Mrs. A. F. Pana, a friend of defendant's family, and Mrs. John Trascher, his mother, both testified that about 12 o'clock p. m., every one was having such a good time at the party, and as the liquor had been consumed, Mrs. Thompson and the defendant went to his apartment to get some whisky which had been placed there by Mrs. Thompson. They further stated that the couple remained away for about one-half hour and returned with two quart bottles of whisky; that the party continued until about 2:30 o'clock in the morning; and that the named co-respondent did not attend the party.

The alleged co-respondent testified that she was not acquainted with the defendant during June 1933, but that she met him several months later, through defendant's sisters, at Mrs. Thompson's home; that she did not attend the party on June 15, 1933, and denied that she was with the defendant at his apartment on the night in question, or any other night. She admitted that she knew the defendant was a married man and the father of a child, and that she went out with him accompanied by his sister, Aletha.

In rebuttal, Mrs. Marie Dillard, a disinterested witness and an acquaintance of the plaintiff, testified that during April of 1933, she had seen the defendant and the alleged co-respondent at a professional wrestling bout held at the Coliseum Arena; that the young lady was holding defendant's hat, and that they were alone.

Only issues of fact, which depend upon the veracity of the witnesses, are involved in this case. It is apparent that the trial judge disbelieved the testimony of the defendant and his sister, Mrs. Thompson, that they were the ones who visited his apartment on the night of June 15, 1933. Although they admitted that the plaintiff accused her husband of infidelity as he came out of the apartment, both of them also further admitted that they made no effort to explain to the plaintiff at that time, or any time thereafter, that she was in error. The most natural thing for them to have done, under such circumstances, was to have denied any impropriety or wrongdoing, and insist upon plaintiff identifying Mrs. Thompson, with whom plaintiff was well acquainted. The explanation that they were stunned by the unjust charge is unreasonable and unsatisfactory.

The co-respondent testified that she worked as a saleslady in one of the Canal street stores and that the plaintiff came to that place of business and accused her, in the presence of others, of indiscretions with her husband, but she admits that she did not remonstrate with plaintiff that the charges were unfounded and untrue. Surely such conduct is not that of an innocent person who is falsely accused of a wrongdoing.

No plausible reason is given by defendant and Mrs. Thompson why it was necessary for her to accompany defendant to his apartment for the purpose of securing the two quarts of whisky. It is unusual for the hostess to leave her friends and guests at midnight for the purpose of going for

additional refreshments, when her brother could have performed that errand by himself.

The defendant, under cross-examination, admitted without objection that his first wife divorced him on the grounds of adultery, and that he had taken, at different times, two other young ladies riding in his automobile at night, alone.

The above, and other circumstances which we do not think necessary to mention, justified the trial court in believing the plaintiff and her witnesses and disbelieving the defendant and his witnesses. We therefore conclude that the judgment granting the divorce in favor of the wife and awarding her the custody of her minor child is correct.

It was shown that the defendant was employed and had voluntarily paid $6 a week alimony for the support of his wife and his child. However, it appears that he did not regularly pay the alimony, and, subsequently, reduced it to $3.50 per week, and thereafter did not pay that sum regularly.

The evidence is clear that he owned a Hudson coupé automobile and took young ladies to wrestling bouts and places of amusement; that since this suit was filed, the oil station which he operated was incorporated and his brother-in-law and father were named as the stockholders, with the exception of one share, which was placed in his name; and that defendant is president of the concern and still operates it in connection with an agency for the sale of used automobiles. He made no attempt to reveal the exact amount of his income, but plaintiff established a prima facie case of the necessity for more than $6 per week for the proper maintenance of the child and herself. There has been no answer to the appeal asking that the award be increased, and, under the circumstances, the judgment granting $6 per week alimony for the support of the plaintiff and her child is affirmed.

For the reasons assigned, the judgment appealed from is affirmed at the defendant's costs.

FOURNET, J., takes no part.